**McGRATH, Attorney General, et al. v. ZANDER.**

No. 10107.

United States Court of Appeals
District of Columbia Circuit.

Argued April 15, 1949.

Decided Oct. 10, 1949.

650

Mr. J. Roger Wollenberg, Washington, D. C., pro hac vice, by special leave of Court, with whom Mr. James L. Morrisson, Attorney, Department of Justice, Washington, D. C., was on the brief, for appellants.

Mr. Joseph W. Bishop, Jr., Attorney, Department of Justice, Washington, D. C., also entered an appearance for appellants.

Mr. Michael J. Keane, Jr., Washington, D. C., with whom Mr. Karl Michelet, Washington, D. C., was on the brief, for appellee.

Messrs. Donald Hiss and Clifton J. Stratton, Jr., Washington, D. C., filed a brief for Emily Pavenstedt Fritze and Ellen Biddle Stackelberg as amici curiae, urging affirmance.

Before CLARK and PROCTOR, Circuit Judges, and ARTHUR F. LEDERLE, District Judge, sitting by designation.

PROCTOR, Circuit Judge.

Appellee, a native born adult citizen of the United States, with home and domicile in New Orleans, went to Germany in June, 1939, for a visit, with her return passage booked for September 9, 1939. A train of fortuitous circumstances, starting with the sudden invasion of Poland, delayed and finally prevented her return. While so detained, she fell in love with and married Dieter Zander, a German citizen. According to German law the marriage "bestowed" upon her the citizenship of her husband. Yet, she rejected all theories of German citizenship as an incident of her marriage, which was planned with Zander upon the condition and understanding that their matrimonial domicile should be established permanently in New Orleans, where she had lived for many years, and that the marriage would in no way affect her status as an American citizen. Upon announcing their engagement Zander was drafted into the German Army, but while on a leave of absence they were married. It was understood that she should return to New Orleans whenever possible, and the fortunes of war permitting—he would join her there. During hostilities between Germany and the United States, Mrs. Zander was registered and treated as an alien by German authorities and kept under constant surveillance. She avoided all acts in aid of the German war effort, even resorting to connivance with a friendly German physician to simulate physical illness when examined for such work. She did nothing inconsistent with loyalty to the United States and did all things within her power to maintain American citizenship and allegiance. In the spring of 1945, disguised as a refugee, she fled some two hundred miles to the American Army, to which she rendered service for many months. Finally, in May, 1946, with assistance of American officials, she returned to the United States. Finding that her Aunt, with whom she lived in New Orleans, had died, she settled in New Jersey with her cousin, a daughter of the Aunt, bringing all her belongings from the home in New Orleans.

While serving with the German Army in Africa, Zander was taken prisoner and sent to the United States. There he ingratiated himself with American authorities by assisting in indoctrinating his fellow prisoners with the principles of democracy. Finally in 1947 he was sent to Germany and discharged; whereupon he returned to the United States upon an immigration visa and joined his wife at her home in New Jersey, where they now live "as American citizens." We infer, therefore, that he is permanently settled there and seeking American citizenship.

When Mrs. Zander, appellee, departed for Europe she held a remainder interest in a trust estate created by her grandfather, an American citizen. This interest matured while she was in Germany. The estate was held by a national bank in Kansas, as Trustee, subject to the supervision of a Kansas Court. None of the principal or income was ever paid to Mrs. Zander. In fact, while in Germany, she was dependent upon funds coming from German sources. The foregoing facts are gathered from a lengthy stipulation, upon which by agreement the case was heard by the trial court. The stipulation was also adopted by the Judge for his findings of fact.

The interest of appellee in said estate, $112,391.40 in cash, was seized and vested in the Alien Property Custodian under authority of the Trading With the Enemy Act, as amended, 50 U.S.C.A. War Appendix, § 1 et seq., hereafter sometimes referred to as the Act. The present controversy arises out of Mrs. Zander's suit in the District Court to recover that fund.

The claim is laid in two alternative counts. The first rests upon Section 9(a) et seq., of the Act and the allegation that Mrs. Zander was not an "enemy or ally of enemy" within the meaning of Section 2(a), not being "resident within the territory" of Germany. The second rests upon the amendment of December 18, 1941, Section 32(a), and allegations that appellee had filed a claim with the Alien Property Custodian for return of the seized funds and although entitled thereto the claim had been refused.

Without passing upon the claim as stated in count one, the court entered judgment in Mrs. Zander's favor upon count two, holding that her status as a citizen of the United States remained unaltered by her marriage to a German citizen. In reaching this conclusion the court assumed jurisdiction under Section 10(a) of the Administrative Procedure Act, 5 U.S.C.A. § 1009 (a), to review the proceedings before the Custodian, and treated the action taken by him as a final determination and refusal of the claim. Accordingly judgment was entered upon count two for return of the funds. This appeal followed.

In attacking the judgment appellants contend: (1) Section 9(a) of the Act provides the only judicial remedy for a return, all others being precluded by Section 7(c); (2) the claim before the Custodian, under Section 32(a), rested within his discretion, especially so in view of the statutory requirement for certain findings by the President, or his representative (the Custodian), including a determination that return is "in the interest of the United States"; (3) assuming authority in the court to review proceedings under Section 32(a), there yet was no final refusal of the claim, no determination thereof, and no findings thereunder,—at most only suspension of action to await anticipated legislation; (4) there was no exhaustion of the administrative remedy. For these reasons appellants insist that the court lacked jurisdiction to grant any relief under Section 32(a), upon which count two is based. We agree with these contentions.

■ Section 32(a) is an integral part. of the Trading With the Enemy Act. Section 7(c) limits the means of reclaiming seized property to the "relief or remedy" provided by the Act itself. Section 9(a) provides the only judicial remedy for reclaiming vested property. Uebersee Finanz-Korporation v. Markham, 1946, 81 U.S. App.D.C. 284, 285, 158 F.2d 313, affirmed 1947, 332 U.S. 480, 68 S.Ct. 174, 92 L.Ed. 88; Cummings v. Hardee, 1939, 70 App. D.C. 18, 23, 102 F.2d 622. Yet, notwithstanding this positive limitation the District Court assumed authority to review the proceedings before the Custodian by virtue of the Administrative Procedure Act, 5 U.S.C.A. §§ 1001–1011. This, we think, was error. Section 10 of that Act, 5 U.S. C.A. 1009, excepts from review administrative rulings where "(1) statutes preclude judicial review or (2) agency action is by law committed to agency discretion." Here both exceptions stand as bars. Section 7 (c) of the Trading With the Enemy Act precludes it. The discretionary nature of the action granted the Custodian by Section 32(a) precludes it. We gather also from the legislative history that judicial review was not intended by Congress. See Hearings before House Committee on the Judi-

ciary (Sub-committee 1) on H.R. 3750, 79th Cong., 1st Sess., pp. 14, 35, 52; H.R.Rep. 1269, 79th Cong., 1st Sess.; S.Rep. 920, 79th Cong., 2d Sess. We may also add, without extending this opinion by any detailed reference to the record, that in our judgment there was no final determination or refusal of the claim by the Custodian, and no action that can properly be so construed. Hence, at all events, there was no exhaustion of the administrative remedy, an essential condition to judicial review. Myers v. Bethlehem Corp., 1938, 303 U.S. 41, 51, 58 S.Ct. 459, 82 L.Ed. 638; Aircraft & Diesel Corp v. Hirsch, 1947, 331 U.S. 752, 757, 67 S.Ct. 1493, 91 L.Ed. 1796.

It follows that we must hold the court was without jurisdiction to review the administrative proceedings or grant any relief under Section 32(a), upon which count two of the complaint is based. The judgment, as it now stands, must be vacated. However, this does not dispose of the matter, for we are of the opinion that the conceded facts stated in the stipulation and adopted as the court's findings, establish a case entitling appellee to recover upon count one, grounded upon section 9 (a) of the Act. That section authorizes suit in the District Court after filing of a notice of claim with the Custodian, where no application has been made to the President. In those circumstances this suit was filed. Count one is grounded upon the allegation that Mrs. Zander was not "an enemy or ally of enemy" of the United States. Although the allegation is denied, conceded facts leave only the legal question whether she was "resident within" Germany. Citizenship is not directly involved. True it is that mere presence within enemy territory of an enemy national during hostilities is usually a prohibitive factor against the *discretionary* power of return granted the President or his delegate by Section 32(a). However, a court is required to return under Section 9(a) if the claimant be not an "enemy or ally of enemy," which as defined by Section 2 includes "Any individual * * * of any nationality, resident within the territory * * * of any nation with which the United States is at war * * *." The

two sections 9(a) and 32(a) are independent and exclusive of each other. The latter, we think, was added to serve the limited purpose of affording speedy administrative relief (when found by the Executive in the interest of the United States) to certain classes technically banned under Section 9(a), such as nationals of countries overrun by the enemy who remained loyal to the Allied Cause. Although, with certain exceptions, citizenship and presence within the territory of an enemy country bar relief under the discretionary Executive authority granted by Section 32(a), they, of themselves, do not bar recovery under Section 9(a). Vowinckel v. First Federal Trust Co., 9 Cir., 1926, 10 F.2d 19; Stadtmuller v. Miller, 2 Cir., 1926, 11 F.2d 732, 734, 45 A.L.R. 895. The provisions of that section, as concern the courts' jurisdiction, remain unaffected by Section 32(a). In dealing with the Trading With the Enemy Act we must, as the Supreme Court says, endeavor to give all of it the most harmonious, comprehensive meaning possible. Clark v. Uebersee Finanz-Korp., 1947, 332 U.S. 480, 488, 68 S.Ct. 174, 92 L.Ed. 88.

We recur then to the decisive question. Was appellee "resident within" Germany? If so, she became an enemy under Section 9(a) and would not be entitled to recover. The crucial term "resident within" has been interpreted in Josephberg v. Markham, 2 Cir., 1945, 152 F.2d 644, 648-649; Vowinckel v. First Federal Trust Co., supra, 10 F.2d at pages 20, 21; Stadtmuller v. Miller, supra, 11 F.2d at pages 737-739, 45 A.L.R. 895, and Sarthou v. Clark, D.C. S.D.Cal.1948, 78 F.Supp. 139, 142. This last case epitomizes the several rulings in these words: "* * * 'resident within the territory' as employed in the Act connotes something different from and more than living within the specified areas. It is rather indicative of a settled and permanent place of abode, volitionally acquired and voluntarily assumed. It is a habitation having domiciliary properties."

We agree with those decisions. Adopting them as correctly interpreting the critical words before us, we find nothing in the facts to bring appellee within the statu-

tory category of "resident within" Germany, unless it be that marriage technically imposed upon her the residence or domicile of her husband. Otherwise the conclusion is irresistible that Mrs. Zander left the United States for a short stay in Germany with the definite intention of returning to her home in New Orleans, became an unwilling sojourner in Berlin, and was forced by the hard realities of war to remain there, contrary to her unfaltering desire and intention to get away and return to her home and domicile in the United States, as soon as she could do so. We are mindful of the rule that the domicile of a wife usually follows that of her husband. Yet, we think, in the *unusual* circumstances of this case, such a result could not fairly or justly be considered to have followed the marriage of appellee. The rule is not unyielding. It amounts to no more than a prima facie presumption. Commonwealth v. Rutherfoord, 1933, 160 Va. 524, 169 S.E. 909, 90 A.L.R. 348. As the Supreme Court long ago declared, a wife "may acquire a separate domicil whenever it is necessary or proper that she should do so. The right springs from the necessity for its exercise, and endures as long as the necessity continues." Cheever v. Wilson, 1869, 9 Wall. 124, 19 L.Ed. 604. And the court adds, the law "is so well settled that it would be idle to discuss it." See also Williams v. North Carolina, 1942, 317 U.S. 287, 63 S.Ct. 207, 87 L.Ed. 279, 143 A.L.R. 1273, and Oxley v. Oxley, 1946, 81 U.S.App.D.C. 346, 159 F.2d 10.

■ Accepting the proposition that a married couple may by mutual understanding or individual action establish separate domiciles, we can see no just ground to question the legal propriety of Mr. and Mrs. Zander's agreeing before marriage to keep their separate domiciles until the restraints and vicissitudes of war were ended, when with good fortune they could join each other at her home in America. See Commonwealth v. Rutherfoord, supra. We find nothing in the German law to conflict with these views. Even if that were so, we think that the law of this country should govern the case, involving, as it does, the construction and application of an Act of Congress concerning an American citizen in respect to property within the United States.

■ In planning her marriage to a German it was natural that this lady, with undiminished love and loyalty to her own land and a determination to return there as soon as possible, should seek to preserve unaffected her American citizenship and domicile. Indeed it was to the interest of the United States that she do so. Her citizenship was preserved by the Cable Act. Act of September 22, 1922, Sec. 3, 42 Stat. 1022. We think, under the conditions confronting her, it was entirely proper that she should insist upon maintaining her domicile in New Orleans, to which we see no legal barrier, in view of Mr. Zander's consent, especially when backed by his own determination to make America his future home. And the good faith of this understanding is proven by the persistency with which both pursued it to a final consummation.

We hold, therefore, that Mrs. Zander never lost her domicile in America; that she was never "resident within" Germany and not an "enemy" within the purview of Section 9(a). Accordingly we hold that she is entitled to recover under count one of the complaint. To hold otherwise would be, in the language of the Court in the Stadtmuller case, 11 F.2d at page 739, 45 A.L.R. 895, "to impute to Congress an intention which the act does not, in our opinion, warrant, and which is so repugnant to our ideas of justice and equity that we cannot believe that Congress ever intended such a result."

We think it unnecessary to send the case back to the District Court to adjudicate appellee's rights under Section 9(a), as suggested by appellants. The facts are conceded and without conflict. As stated in the stipulation they constitute the findings of the trial court. *They admit of but one conclusion.* Nothing is left but a proper application of the law. Therefore, we remand the case with direction to vacate the present judgment on the second count and enter a judgment in favor of appellee for the sum claimed in the first count.

So ordered.