## PUBLIC ADMINISTRATOR OF NEW YORK COUNTY v. McGRATH.

United States District Court
S.D. New York.
May 21, 1952.

Joseph A. Cox, New York City, Joseph T. Arenson, New York City, of counsel, for Public Administrator of New York County, as Administrator of Estate of Janis Freimanis, Deceased.

Harold I. Baynton, Asst. Atty. Gen., Myles J. Lane, U. S. Atty. Southern District of New York, New York City, James D. Hill, Irving Jaffe, Attorneys, Department of Justice, Washington, D. C., for defendant.

IRVING R. KAUFMAN, District Judge.

Defendant moves to dismiss the complaint on the ground that this court lacks jurisdiction over the subject matter in that, as it appears from the face of the complaint, the sole distributees of the estate which plaintiff seeks to administer are enemies or allies of enemies, as those terms are defined by the Trading with the Enemy Act, 50 U.S.C.A. Appendix, §§ 1, 2, and Congress has not consented that the United States be sued by enemies or allies of enemies.

Plaintiff instituted suit on January 23, 1952 under 50 U.S.C.A. Appendix, § 9(a), which provides the method by which a person not an enemy or ally of an enemy who claims to property transferred to the Alien Property Custodian may have that property returned.

The following facts are alleged by plaintiff's attorney in the complaint. The property, which is the subject matter here, was vested by Vesting Orders 1941 and 1942, executed on August 6, 1943, and Vesting Order 2092, executed on September 4, 1943. It was vested as belonging to the heirs, legatees, devisees and distributees of Janis Freimanis, deceased. The Vesting Orders found and determined that Georg Freimanis and Alice Freimanis, Janis' widow, were nationals of Germany, a designated enemy country, and along with any other heirs and distributees of Janis Freimanis, seized their interest in the estate of Janis Freimanis to be held or otherwise dealt with in the interest of and for the benefit of the United States.

Janis Freimanis died intestate on or about August 18, 1941 leaving him surviving his widow Alice and his one son Georg as his only heirs and distributees. Alice and Georg Freimanis were citizens of the Republic of Latvia since that state came into existence in 1918, and they were residing in Riga, Latvia, since 1925. In March, 1940 Mr. and Mrs. Freimanis left Latvia on a business trip to Rotterdam, Holland, and were there when the Germans invaded the Lowlands. On June 24, 1940 they were passing through Germany on their way home to Riga and visiting with their son Georg, who was then in Gdynia in German-occupied Poland. At that time they learned that the Russians had occupied Latvia and thus they were compelled to stay in Gdynia. On August 18, 1941 Janis Freimanis died in a Gdynia hospital of a brain stroke.

On March 18, 1941, while still in Gdynia, Alice Freimanis became a naturalized German citizen under what she states to be compulsory circumstances. She stayed in Germany until 1945 when, following the Allied occupation, she went into a Displaced Persons Camp in the American Zone of Germany. In 1948 she came to the United States on an immigration visa and has resided here ever since.

In October, 1939 Georg Freimanis left Riga, Latvia, for Gdynia in German-occupied Poland when the Russian occupation of Latvia was "imminent". He states that Germany was the only country to which he could obtain admission. He arrived in Gdnyia November 26, 1939, and, being unable to go thence to Sweden as he intended, he remained in Germany until the Allied occupation in 1945. He came to the United States in 1948 on an immigration visa. He too states that he was compelled to become a German citizen during the war.

In 1950 duly constituted West German authorities declared that Alice and Georg Freimanis never had German citizenship.

The complaint alleges that in view of this set of facts, Alice and Georg Freimanis were "no nationals of Germany or of any enemy country at the time of the vesting." Furthermore, it is alleged, they did not "volitionally acquire" residence in Germany, but were compelled to do so by circumstances. In addition, it is claimed that they were not residents of any enemy country within the meaning of the Trading with the Enemy Act.

On March 27, 1942 plaintiff was appointed Administrator of the estate of Janis Freimanis and the New York County Surrogate issued Letters of Administration to him.

Plaintiff has demanded the vested funds from defendant but to no avail. As a result, suit was commenced.

■ To defeat defendant's motion, plaintiff takes two lines of argument. His initial contention is that his citizenship as fiduciary rather than the citizenship of the beneficiaries determines the capacity to sue. I reject the argument on the authority of Farmers Loan & Trust Co. v. Hicks, 2 Cir., 1925, 9 F.2d 848, certiorari denied 1925, 269 U.S. 583, 46 S.Ct. 120, 70 L.Ed. 424; Central Hanover Bank & Trust Co. v. Markham, D.C.S.D.N.Y.1946, 68 F.Supp. 829.

The second argument cannot be dispatched so readily. It is that Alice and Georg Freimanis are not within the class prescribed by the Trading with the Enemy Act.

Section 2(a) of the Act defines an enemy as: "Any individual, partnership, or other body of individuals, of any nationality, *resident within* the territory (including that occupied by the military and naval forces) of any nation with which the United States is at war * * *." (Emphasis supplied.)

The contention is that for purposes of the Act these beneficiaries had residence *nowhere* since they decided not to return to Latvia before that country became enemy-occupied, and since they did not voluntarily reside in Germany or German-occupied Poland. The government's rebuttal is that for purposes of the Act, they either had to be residents of Latvia or of German-occupied territory, and in either case they would be barred by the Act from maintaining a suit.

■ The issue thus narrows down to the meaning of the words "resident within" which appear in section 2 of the Act. A very recent construction of the term is appropriate here.

"To hold that 'resident within' enemy territory implies something more than mere physical presence and something less than domicile is consistent with the emanations of Congressional purpose manifested in the entire Act, and the relevant extrinsic light, including the decisions of lower courts on this issue, which we note without specifically approving any of them. See McGrath v. Zander, 85 U.S.App.D.C. 334, 177 F.2d 649; Josephberg v. Markham, 2 Cir., 152 F.2d 644; Stadtmuller v. Miller, 2 Cir., 11 F.2d 732, 45 A.L.R. 895; Vowinckel v. First Federal Trust Co., 9 Cir., 10 F.2d 19; Sarthou v. Clark, D.C., 78 F.Supp. 139."

Per Mr. Justice Frankfurter in Guessefeldt v. McGrath, 1952, 342 U.S. 308, 312, 72 S.Ct. 338, 341.

I am thus bound by an authoritative ruling on the limits of the meaning of "resident within". Quaere: what in the facts of the Guessefeldt case generated the majority's conclusion that Guessefeldt was not a resident within Germany for purposes of the Act?

Guessefeldt was a German citizen who lived continuously in Hawaii from 1896 to 1938. In April, 1939 he went to Germany with his family for a vacation. Following the outbreak of the recent war, he was unable to secure passage home before March, 1940 when his re-entry permit expired. When the United States entered the war, Guessefeldt was involuntarily detained in Germany by the Germans and then by the Russians. He did not return to this country until July, 1949. Mr. Justice Frankfurter said of this situation in 342 U.S. at page 312, 72 S.Ct. at page 341:

"Guessefeldt retained his American domicile. Moreover, if anything more than mere physical presence in enemy territory is required, it would seem clear that he was not an 'enemy' within the meaning of § 2. His stay before the war, as a matter of choice, was short. The circumstances negative any desire for a permanent or long-term connection with Germany. He intended, and indeed attempted, to leave there before this country entered the war. Being there under physical constraint, he is almost literally within the excepted class as authoritatively indicated by Mr. Montague."[1]

1. Representative Montague was one of the managers of the bill which embodied the problematical words. During the formulation of the statutory language, he

The Guessefeldt "circumstances" appear in greater detail in the statement of the facts as reported in the District Court's opinion, D.C.D.C.1950, 89 F.Supp. 344. The following facts were set out there at page 345:

"During * * * [Guessefeldt's] enforced stay in Germany, plaintiff did not own property of any kind there, purchased no war bonds or other securities, did not vote in any elections, did not engage in any efforts directly or indirectly in aid of or assistance to the war effort of Germany or of any enemy or ally of an enemy of the United States, nor was he ever directly or indirectly employed by or in the service of any government which was an enemy of the United States and never committed any act hostile or inimical to the interests of the United States."

▆ The complaint here is singularly lacking in any such facts from which I am able to construct a set of circumstances which would bring this situation into proximity with that of the Guessefeldt case. As the case before me now stands, any factual analogies between it and Guessefeldt are simply too inexact to permit of harmonizing the two cases. Whereas Guessefeldt appears to have been merely physically present in Germany, the facts here lead directly to the conclusion that there was in this situation the "something more" which categorizes each of the Freimanis' as a "resident within the territory (including that occupied by the military and naval forces) at any nation with which the United States is at war * * *." The allegations in the complaint based upon fact are accepted as true for the purposes of this motion.[2] I cannot conclude from them that Alice and Georg Freimanis were simply and solely physically present in occupied Poland while the United States was at war with Germany. Section 2 applies in these circumstances and the remedies provided by section 9(a) of the

Act are not available to plaintiff. Swiss Nat. Insurance Co. v. Miller, 1925, 267 U.S. 42, 45 S.Ct. 213, 69 L.Ed. 504.

In addition to Guessefeldt, plaintiff relies upon four other cases to sustain the position that section 2 does not apply here. I shall discuss them briefly.

Stadtmuller v. Miller, 2 Cir., 1926, 11 F.2d 732 and McGrath v. Zander, 1949, 85 U.S. App.D.C. 334, 177 F.2d 649, both involved the situation in which domiciliaries of the United States (in one case a long-settled alien; in the other a citizen) were engulfed by the tides of war while temporarily visiting in Germany. The opinion in each case makes explicit and forceful reference to the patent intent of those internees to return to the United States as soon as possible. This was stressed by both courts, for it apparently represented to them a firm factual basis upon which to hold that each of those people was in Germany because, and only because, it was impossible to leave while a World War was being fought. This, of course, goes to the question of whether or not there is "something more". There it was lacking. Here it is present. Each opinion also notes that the internees did nothing inimical to the interests of the United States.

Vowinckel v. First Federal Trust Co., 9 Cir., 1926, 10 F.2d 19, held that a long-term occupant of the United States, although never actually a citizen here, did not become an enemy as defined by section 2 by entering the German Army as a Red Cross surgeon. In view of the fact that the United States was a signatory to an international convention on the treatment of the wounded, it was held that Vowinckel was outside the intent of Congress when it formulated the definition of "enemy". No such circumstance is pleaded here. Furthermore, the equities of the case apparently played an important role in the decision. This too appears to have been

stated that the words were meant to cover much more than those domiciled in enemy territory. As was noted at pages 311–312 of 342 U.S., at page 341 of 72 S.Ct. of the Guessefeldt opinion: "Yet prisoners of war, expeditionary forces and 'sojourners' were not, [Mr. Mon-

tague] said, intended to be included. 55 Cong.Rec. 4922."

2. For instances of allegations in the complaint which may be characterized as hearsay upon hearsay, see paragraphs 14, 16 and 17.

most persuasive to the courts which decided the Stadtmuller and Zander cases.

Finally plaintiff urges the applicability of Josephberg v. Markham, 2 Cir., 1945, 152 F. 2d 644, in this situation. I do not agree. As I read that case, the essence of the holding was, as in Guessefeldt, the "something more". In fact, exactly that language was used by the Court of Appeals for this circuit. Judge Chase held at page 648 of 152 F.2d:

> "We think 'resident' in the statute and orders imports something more than mere physical presence in a designated enemy country."

In that case, Cerutti, in whose behalf Josephberg was suing, was an adjudicated incompetent (a paranoid schizophrenic) who was in an enemy country (Italy) for reasons which a majority of the court held were less than legally volitional. Two grounds for the holding were stated: First, Cerutti was voluntarily in Italy only to the extent that one in his condition could be, and in that sense he was not a resident of Italy for purposes of the Act. Second, because of Cerutti's unique situation which is described at length in the opinion, none of the property could be subjected to enemy use by reason of his presence in Italy. We are dealing in the instant situation with presumably competent people, who, on the facts before me, were not merely physically present in occupied Poland, hence I do not see the applicability here of the first basis for the Josephberg opinion. It is even clearer that the second basis for that opinion cannot obtain here, for it is completely impossible for me to say whether or not on these facts any of the property could have been subjected to enemy use by reason of the Freimanis' presence in German-occupied Poland.

I hold that by their presence in German-occupied Poland Georg and Alice Freimanis were enemies within § 2 of the Trading with the Enemy Act. Neither they nor plaintiff qualify for the remedies available under § 9(a) of the Act and therefore this court lacks jurisdiction over the subject matter of the suit. The complaint is dismissed.

Settle order.