Helmut **LEGERLOTZ**, Appellant,

v.

William P. **ROGERS**, Attorney General of
the United States, Appellee.

No. 14587.

United States Court of Appeals
District of Columbia Circuit.

Argued Jan. 23, 1959.

Decided April 16, 1959.

Mr. Robert H. Reiter, Washington, D. C., for appellant.

Mr. George B. Searls, Atty., Dept. of Justice, with whom Mr. Irwin A. Seibel, and Miss Sharon L. King, Attys., Dept. of Justice, were on the brief, for appellee. Miss Marbeth A. Miller, Atty., Dept. of Justice, also entered an appearance for appellee.

Before PRETTYMAN, Chief Judge, and WILBUR K. MILLER and WASHINGTON, Circuit Judges.

WASHINGTON, Circuit Judge.

This is an alien property case, in which the central issue is whether plaintiff-appellant is barred by the statute of limitations.

On September 29, 1943, the Alien Property Custodian seized property belonging to the appellant. 8 Fed.Reg. 13271. Formal claim for the return of the property, satisfying the requirements of both Sections 9(a) and 32 of the Trading With the Enemy Act,[1] was filed on December 16, 1946.[2] On December 22, 1948, the Attorney General published a notice of intention to return appellant's property, pursuant to Section 32(f) and the appropriate regulations. 13 Fed.Reg. 8236. On March 3, 1949, the Attorney General published an order providing for the return of appellant's property, amounting to approximately $733,000. 14 Fed.Reg. 973. Substantial payments to plaintiff-appellant were made under the order of return. The sum of $30,-612.51 was retained to cover tax liabilities. Some six and a half years later, on December 22, 1955, the Attorney Gen-

eral published an amended order of return, retaining the further sum of $48,-317.94. 20 Fed.Reg. 9871. The Government says it retained this amount pursuant to the Blum-Byrnes Agreement between the United States and France.[3] Payment was made to appellant of the net amount remaining. Subsequently, the appellant filed suit in the District Court to require payment of the total retained amount of $78,930.45. Summary judgment for the appellee was granted on the ground that the statute of limitations had run on a suit under Section 9(a) of the Trading With the Enemy Act. The District Court also observed that there could be no judicial review of the Attorney General's actions under Section 32 of the Act. This appeal followed.

The main issue in the case is whether the plaintiff's suit under Section 9(a) was timely brought. Section 33 of the Act provides that "No suit pursuant to section 9 * * * may be instituted after April 30, 1949, or after the expiration of two years from the date of the seizure * * * or vesting * * *, but in computing such two years there shall be excluded any period during which there was pending a suit or claim for return pursuant to section 9 or 32 (a) * * *." The plaintiff argues that he had given an informal notice of claim prior to the two-year period and therefore the statute of limitations was tolled, or at least that there was a question of fact whether he did give such informal notice and therefore summary judgment should not have been granted. An inspection of the documents which he presented to the District Court, however, shows that his claim of having given informal notice in or around August of 1945 is essentially frivolous and not worthy of serious consideration. The court had the power to determine whether any "genuine issue of material fact"

---

1. 40 Stat. 411 (1917), as amended, 50 U.S.C.A.Appendix, §§ 1–40, as amended, 50 U.S.C.A.Appendix, §§ 6b, 9, 20, 32, 33, 39.

2. According to the appellant, informal no-

tice of claim had been filed in or around August of 1945. This will be discussed later in this opinion.

3. 63 Stat. 2507 (1949).

existed. Fed.R.Civ.P. 56, 28 U.S.C.A. It seems plain that there was no genuine issue.

Appellant further argues that the statute of limitations should not apply to him, under the circumstances here presented, quite apart from the contention as to informal notice. But the wording of Section 33 of the Act is very clear. If more than two years have elapsed since seizure, and no tolling has occurred, no suit pursuant to Section 9(a) "may be instituted after April 30, 1949." See Brownell v. Morizo Nakashima, 9 Cir., 243 F.2d 787, certiorari denied, 1957, 355 U.S. 872, 78 S.Ct. 117, 2 L.Ed.2d 77; Grabbe v. Brownell, 2 Cir., 1957, 247 F.2d 402; Pass v. McGrath, 1951, 89 U.S.App. D.C. 371, 192 F.2d 415, certiorari denied 1952, 342 U.S. 910, 72 S.Ct. 302, 96 L.Ed. 681; Pederson v. Brownell, D.C.D.Or. 1955, 129 F.Supp. 952.

█ Section 33 is a harsh statute. But it must be pointed out that the plaintiff here had until April 1949 to bring suit under Section 9(a). It is true that he filed a formal claim in 1946 which was presumably valid under either Section 9 (a) or 32(a), but proceedings under "sections 9(a) and 32(a) are independent and exclusive of each other." McGrath v. Zander, 1949, 85 U.S.App.D.C. 334, 337, 177 F.2d 649, 652.[4] Proceedings under Section 9(a) are for the return of property to non-enemy aliens, and under Section 32(a), for the return of property to certain "technical enemies" and others deemed worthy of obtaining return. Furthermore, the very nature of a Sec-

tion 32 proceeding could well have led the plaintiff to bring suit under Section 9(a) prior to April 30, 1949, even though the Government had indicated its intention to return the property, for it would seem that prior to return the property still remains vested in the Alien Property Custodian (or the Attorney General as his successor), and not in the claimant. According to Section 32(f) and Regulation § 502.107, 20 Fed.Reg. 7534, the notice of intention to return may be revoked at any time prior to return. Should the Attorney General revoke his intention to return on the basis of national interest, the claimant has no additional basis for suit, for Section 32(f) specifically states that "Publication of a notice of intention to return shall confer no right of action upon any person to compel the return of any such property * * * ."[5]

█ Nor does this court have jurisdiction under Section 32(a) to grant relief, either in a suit in equity or by judicial review of the Section 32 administrative proceedings, because by virtue of Section 7(c) the exclusive judicial remedy under the Act is to be sought under Section 9(a).[6] See Tiedemann v. Brownell, 1955, 96 U.S.App.D.C. 9, 222 F.2d 802; Hawley v. Brownell, 1954, 94 U.S. App.D.C. 104, 215 F.2d 36; McGrath v. Zander, supra. By parity of reasoning, there can be no judicial review under Section 10 of the Administrative Procedure Act, 60 Stat. 243 (1946), 5 U.S. C.A. § 1009 (1952). McGrath v. Zander,

---

4. For a detailed analysis of the differences between Section 9(a) and Section 32(a) proceedings see Comment, 62 Yale L.J. 1210, 1214–25 (1953).

5. Even if it were to be considered reasonable for the appellant to have relied on the acts of the Custodian in refraining from bringing suit under Section 9 (a), the fact remains that estoppel cannot be used against the Federal Government. See Anderegg v. United States, 4 Cir., 1948, 171 F.2d 127, 128, certiorari denied, 1949, 336 U.S. 967, 69 S.Ct. 937, 93 L.Ed. 1118; cf. Wallace v. United

States, 2 Cir., 142 F.2d 240, 242, certiorari denied, 1944, 323 U.S. 712, 65 S. Ct. 37, 89 L.Ed. 573. See also Andreae v. Redfield, 1878, 98 U.S. 225, 25 L.Ed. 158.

6. Section 7(c) specifically states that "the sole relief and remedy of any person having any claim * * * shall be that provided by the terms of this Act * *." Section 9(f) specifies that except as provided in Section 9, property which is or has been vested in the Custodian "shall not be * * * subject to any order or decree of any court."

supra, 85 U.S.App.D.C. at page 336, 177 F.2d at page 651.

For these reasons we conclude that the judgment of the District Court must be Affirmed.