Werner C. VON CLEMM et al.,
Plaintiffs, Appellants,

v.

Roman Acosta BANUELOS et al.,
Defendants, Appellees.

No. 74–1036.

United States Court of Appeals,
First Circuit.

Heard April 3, 1974.

Decided June 3, 1974.

Charles B. Swartwood, III, Worcester, Mass., with whom Mountain, Dearborn & Whiting, Worcester, Mass., was on brief, for plaintiffs, appellants.

Bruno A. Ristau, Atty., Dept. of Justice, with whom Irving Jaffe, Acting Asst. Atty. Gen., James N. Gabriel, U. S. Atty., and Morton Hollander, Atty., Dept. of Justice, were on brief, for defendants, appellees.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

COFFIN, Chief Judge,

Appellant began his long and arduous relationship with the Alien Property Custodian and the federal judicial system in the year 1941.[1] Since that time his case has been scrutinized by judges and administrators at epic length. It falls to us to decide whether he has received the consideration which is his due or whether another round of judicial examination is called for. We hold that review of the administrative decision under Section 32 of the Trading with the Enemy Act (the Act), 50 U.S.C.App. § 1 et seq. is foreclosed to the appellant; the district court properly dismissed the complaint.

Through all these years appellant's objective has been to recoup the value of seized items which included six packages of diamonds and two hundred seventy packages of synthetic and semi-precious stones, sold by the Alien Property Custodian, sometime subsequent to their vesting in 1945, for well over one million dollars.[2]

---

1. Von Clemm and Alley, as trustee for Von Clemm's children formed a partnership in 1941, Bridge Imports. Von Clemm was the 75% general partner and Alley was, as trustee, a 25% special partner. Bridge was a partial owner of Pioneer. The appeal brief has not differentiated their interests. We note, however, that Alley sued the Attorney General in federal court under § 9(a) seeking return of the property in his capacity of limited partner in Bridge. The relationship between Bridge and Pioneer is fully explained in Von Clemm v. Smith, 255 F.Supp. 353, 361 (S.D.N.Y.1965). The court dismissed the action on the grounds that under New York law a limited partner has no property rights in partnership assets and Alley had no standing to sue. Alley v. Clark, 71 F.Supp. 521 (E.D.N.Y.1947).

2. The property was vested in the Alien Property Custodian between 1942 and 1945 by vesting orders numbered 352, 353, 354, 4754, 4755 and 7611. The complaint alleges these properties were liquidated for a sum in excess of $1,300,000.

The history of appellant's business transactions is complex. It is set forth in Von Clemm v. Smith, 255 F.Supp. 353 (1965). For our purposes it is sufficient to note that, in 1938, appellant, an American citizen born in Germany, undertook to import jewels and other items from Europe under the corporate name Pioneer. He made partial payment in blocked marks which could be obtained at a discount. This commercial enterprise was potentially limited by the Presidential freezing orders of April and May 1940. Executive Order 8389 regulated trade with countries which had been overrun by German armed forces including Denmark, Norway and the Low Countries. Appellant's trade in Belgian and Dutch diamonds was threatened, but, without obtaining the requisite treasury licenses, he arranged a complicated subterfuge for importing the diamonds through Germany. There was persuasive evidence that these transactions, prior to the outbreak of war, involved close contact with and approval by the German government, and indeed that they were for the benefit of that government. *See* 255 F.Supp. at 362–363. One of the diamond shipments, arranged through intermediaries, cleared customs. This transaction led to appellant's prosecution and conviction for conspiracy to import under a false declaration that the diamonds were of German origin, in violation of the freezing orders and therefore of the Act, and of 12 U.S.C. § 95, affirmed in United States v. Von Clemm, 136 F.2d 968 (2d Cir.), cert. denied, 320 U.S. 769, 64 S.Ct. 81, 88 L.Ed. 459 (1943). Other shipments similarly arranged were seized by customs and are the crux of this suit.

Upon the finding by the Custodian that the property was owned beneficially or directly be enemy nationals, the property was seized and vested as authorized by the Trading with the Enemy Act, 50 U.S.C.App. § 5. The Act itself established the means to appeal such a determination. The routes provided for appeal are alternative routes. One or the other (but not both) is available to each claimant.[3] Section 9(a) of the Act provides that anyone not an "enemy" as defined therein may seek administrative return of the property and sue in equity in a federal district court. Section 32(a) indicates that for those ineligible for Section 9(a) relief there is exclusive administrative recourse.[4]

■ In 1959, after a denial of return of proceeds by a hearing examiner for the Office of Alien Property, appellant filed suit for return of the property under Section 9(a).[5] The statutory scheme implicitly requires that the court determine de novo controverted issues. The liminal issue, upon which appellant's right to § 9(a) relief depended was whether or not he was an "enemy" or an "ally of an enemy" under the Act.[6]

3. Legerlotz v. Rogers, 105 U.S.App.D.C. 256, 266 F.2d 457, 459 (1959); McGrath v. Zander, 85 U.S.App.D.C. 334, 177 F.2d 649, 652 (1949).

4. Section 32(a) was enacted subsequent to the major portions of the Act, and was intended to permit the Attorney General at his discretion to obviate injustices that might result. For analysis of the statute, *see* Schilling v. Rogers, 363 U.S. 666, 674–675, 80 S.Ct. 1288, 4 L.Ed.2d 1478 (1960); McGrath v. Zander, 177 F.2d at 652.

5. Section 9(a) provides that: "Any person not an enemy or ally of [an] enemy claiming any interest, right, or title in any money or other property which may have been conveyed . . . or paid to the Alien Property Custodian or seized by him hereunder and held by him . . . may file with the said custodian a notice of his claim under oath . . . and the President . . . may order the payment . . . or delivery to said claimant. . . . If the President shall not so order . . . said claimant may institute suit in equity . . . in the district court of the United States . . . to establish the interest, right, title, or debt so claimed, and if so established the court shall order the payment . . . or delivery to said claimant . . . .."

6. When seeking recovery of seized property under the Act the petitioner has the burden of showing himself not to be an "enemy" or "ally of an enemy" within the meaning of the Act. Societe Internationale v. Rogers, 357 U.S. 197, 212, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958); Manufacturers Trust Co. v. Kennedy, 291 F.2d 460, 462 (2d Cir. 1961).

The district court held a six week trial, directed, in part, toward resolution of this dispute. Appellant was affirmatively shown to have been an agent of the German government until the outbreak of hostilities. The court concluded that in light of his prior conduct, and, in its view, appellant's failure to show that he had discontinued his relationship with the German government after the outbreak of war, he had failed to prove that he was not an agent of an enemy for purposes of the Act.[7] Under § 9(a) recourse to judicial remedy is limited to those not "enemies" or "allies of an enemy". The court, therefore, dismissed the action for want of jurisdiction. Von Clemm v. Smith, 255 F.Supp. 353 (S.D.N.Y.1965), aff'd, 363 F.2d 19 (2d Cir. 1966), cert. denied, 385 U.S. 975, 87 S.Ct. 502, 17 L.Ed.2d 438 (1966).

Appellant then pursued the route left open to those not qualified for § 9(a) relief. He pursued administrative appeals until March 22, 1971 when the Attorney General issued an order disallowing the claim as "not in the interest of the United States". Within the meaning of § 32(a)(5) of the Act, this last avenue led appellant to this court where he seeks to appeal the administrator's determination. The district court dismissed the complaint for want of subject matter jurisdiction. The court reasoned that Section 7(c) of the Act[8] limits judicial review to claims filed pursuant to Section 9(a). Since, by judicial decision, appellant was eligible only for § 32(a) relief, he had no basis for seeking judicial review of the exclusive administrative determination. The finality and exclusivity of administrative relief provided by Section 32(a) has been confirmed in Schilling v. Rogers, 363 U.S. 666, 80 S.Ct. 1288, 4 L.Ed.2d 1478 (1960), which held this limitation on judicial review to be constitutional.[9]

Appellant argues that *Schilling* dealt only with the rights of enemy nationals, not entitled to Fifth Amendment protections. As a citizen, appellant claims that his right to an adjudication of his property rights *cannot be diminished by* imposing on him the burden of proving that he was not an "ally of an enemy" under § 9(a), or denied entirely through unreviewable administrative action, under § 32(a). Having been subjected to the "impermissible burden" in his earlier § 9(a) court suit, he claims that a judicial forum for consideration of his constitutional claim must lie in review of the § 32(a) determination.

Past Court pronouncements may perhaps be read as giving a constitutional bill of health to § 9(a) by approving the availability to a nonenemy claimant of a later judicial hearing on the propriety of a seizure. *See, e. g.,* Societe Internationale v. Rogers, 357 U.S. 197, 211, 78 S.Ct. 1087, 2 L.Ed.2d 1255

---

7. The court couched its findings in terms of failure of proof. Nevertheless, in order to rule that appellant was ineligible for § 9(a) treatment, the court must necessarily have found that he was an "ally of an enemy" for purposes of the Act. *See* Von Clemm v. Smith, 255 F.Supp. at 355–356, 367, 369.

8. Section 7(c) of the Act provides: "The sole relief and remedy of any person having any claim to any money or other property heretofore or hereafter . . . transferred . . . to the Alien Property Custodian . . . shall be that provided by the terms of this Act . . . .."

9. In *Schilling* an alien filed a claim under § 32(a) for return of property, the claim was denied and the alien sought judicial review of a question of law: whether he was excluded under the Act from *all* relief. The Supreme Court held that § 7(c) of the Act precluded judicial review of the administrative disposition. The court also held that the Administrative Procedure Act was not applicable because by its terms no judicial review is afforded where "(1) statutes preclude judicial review or (2) agency action is by law committed to agency discretion." The court found the § 7(c) of the Act invokes both limitations: "[T]he Trading with the Enemy Act excludes a judicial remedy in this instance, and that . . . because of this, as well as because of the discretionary character of the administrative action involved, the Administrative Procedure Act by its own terms is unavailing to the petitioner." *Schilling, supra,* 363 U.S. at 676.

(1958); Stoehr v. Wallace, 255 U.S. 239, 245–246, 41 S.Ct. 293, 65 L.Ed. 604 (1921). But in none of such cases were the status of the claimant and the claimant's burden to establish his nonenemy status in issue.

■■ Assuming, without conceding, that appellant's claim is not foreclosed by prior cases, we examine it. Since Congress has demonstrated its intent to foreclose judicial review of the administrative decision under § 32(a), a holding that such review is constitutionally required would have to be predicated on a finding that the present statutory scheme is fatally defective. Appellant claims that the taking of his property must be accompanied by the highest due process safeguard, judicial process. The most extensive judicial scrutiny includes determination of "jurisdictional" or "constitutional facts".[10] Here the essential fact is whether appellant was an "enemy" or "ally of an enemy" under the Act. Section 9(a) provides not only for judicial determination of this fact but a de novo judicial hearing. Appellant had the explicit opportunity to establish his status. He had the implicit opportunity to challenge the constitutionality of the burden of proof. The fact that judicial relief was made available before rather than after administrative jurisdiction was assumed is not determinative. See Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834 (1944). "There isn't often a constitutional right to a second bite at the apple." The Power of Congress to Limit the Jurisdiction of the Federal Courts, 66 Harv.L.Rev. at 1369. The scheme itself provides all the requisite constitutional safeguards. That opportunity was not earlier seized to obtain a judicial ruling on appellant's constitutional assault on the proper burden of proof under § 9(a) does not provide any basis for avoiding the ruling in *Schilling* that § 32(a) relief is exclusively administrative and judicial review is foreclosed. The court below therefore properly ruled that it was without subject matter jurisdiction to review the claim.

■ We too are without jurisdiction to determine whether the district court in the Section 9(a) suit improperly required Von Clemm to bear an affirmative burden of proof.[11] We note, however, that even if we had jurisdiction to consider its legal merits, appellant's claim, since it could have been presented to the second circuit on appeal from Von Clemm v. Smith, *supra*, would be barred by res judicata. The Court's statement a century ago is valid today:

> "[J]udgment, rendered upon the merits, constitutes an absolute bar to subsequent action. It is a finality . . . concluding parties . . . not only as to every matter which was offered and received to sustain or defeat the claim . . . but as to any other admissible matter which might have been offered . . . Such demand or claim, having passed into judgment, cannot again be brought into litigation between the parties in proceedings at law upon any ground whatever." Cromwell v. County of Sac, 94 U.S. 351, 352–353, 24 L.Ed. 195 (1876).

The policies underlying the doctrine are well illustrated by this case. At some point litigation must terminate.

The order of the District Court is affirmed.

10. *E. g.*, Crowell v. Benson, 285 U.S. 22, 54, 52 S.Ct. 285, 76 L.Ed. 598 (1932); Ng Fung Ho v. White, 259 U.S. 276, 285–286, 42 S.Ct. 492, 66 L.Ed. 938 (1922); *see also* St. Joseph Stock Yards Co. v. United States, 298 U.S. 38, 84, 56 S.Ct. 720, 80 L.Ed. 1033 (1936); Ohio Valley Water Co. v. Ben Avon Borough, 253 U.S. 287, 40 S.Ct. 527, 64 L. Ed. 908 (1920); Hart, The Power of Congress to Limit the Jurisdiction of the Federal Courts, 66 Harv.L.Rev. 1362 (1953).

11. While we do not reach this claim, we think it may be weakened by the Supreme Court's holding in Calero-Toledo v. Pearson Yacht Leasing Co., —— U.S. ——, 94 S.Ct. 2080, 40 L.Ed.2d 452, 42 U.S.L.W. 4693, 4701 (1974).