**JOSEPHBERG et al. v. MARKHAM,**
**Alien Property Custodian.**

No. 83.

Circuit Court of Appeals, Second Circuit.

Dec. 10, 1945.

CLARK, Circuit Judge, dissenting.

Hobart S. Bird, of New York City (Hobart S. Bird and Maurice Josephberg, both of New York City, of counsel), for appellants.

John F. X. McGohey, U. S. Atty., of New York City, and C. E. Rhetts, Acting Head, War Division, Harry LeRoy Jones, Chief, Alien Property Litigation Unit, M. S. Isenbergh, and David Schwartz, Chief Trial Attys., War Division, Department of Justice, all of Washington, D. C. (William L. Lynch, Asst. U. S. Atty., of New York City, of counsel), for appellee.

Before SWAN, CHASE, and CLARK, Circuit Judges.

CHASE, Circuit Judge.

The appellants, a committee of one Alfred Cerutti, an incompetent, seek to recover property of the incompetent committed to their care which had been vested by the Alien Property Custodian under order of August 3, 1943.[1] Cerutti was born in Italy, and came to this country in 1913, becoming a naturalized citizen in 1926. At least as early as 1931, he was afflicted with a mental disease known as paranoid schizophrenia and was treated by a New York neurologist during 1929 and 1930. In January of 1931, upon the advice of this doctor that the change would probably be beneficial, Cerutti returned to Italy where he has ever since lived with relatives or at the Villa Turro Sanitarium near Milan as an occasional patient. In 1937, Cerutti inherited a substantial amount of cash and securities in New York. Relatives in Italy instituted "interdiction" proceedings; and in April of that year Cerutti was adjudged an incompetent by the Italian court and a temporary administrator and guardian was appointed. In February of the same year, similar proceedings had been instituted by appellants in the Supreme Court of New York; and a trial by a jury resulted in an adjudication of incompetency. The Italian guardian appeared and sought appointment as ancillary committee of Cerutti's New York property; but, adopting the report of an official referee, the court found Cerutti domiciled and resident, within the meaning of the New York statute, in New York, and by final decree of March, 1939, appointed the appellants as a resident committee of his property. After the vesting order became effective, the appellants duly filed with the defendant a notice of claim for the return of the property but made no application therefor to the President and then brought this suit to recover the property under § 9(a) of the Trading with the Enemy Act, supra. The District Court dismissed the complaint on the merits.

Determination on this appeal, both as to the propriety of the seizure and of the standing of the plaintiffs to sue under § 9(a) of the Act, depends upon whether Cerutti is an "enemy" or a "national of a designated enemy country."[2] Under the definitions as set out, this turns on whether

[1] The Custodian purported to act under the powers given the President by §§ 3(a) and 5(b) of the Trading with the Enemy Act of October 6, 1917, as amended by §§ 301 and 302 of Title III of the First War Powers Act of 1941. 40 Stat. 412, 415, 50 U.S.C.A. App. §§ 3(a) and 5(b), as amended, 55 Stat. 839, 50 U.S.C.A.App. §§ 3(a) and 5(b), 617. These powers were transferred to the Custodian and his office created by Executive Order No. 9095 of March 11, 1942, 50 U.S.C.A.Appendix, § 6 note, 7 Fed.Reg. 1971, Tit. 3 C.F.R. Chap. II, Cum.Supp. p. 1121.

[2] Section 2 of the Act provides: "The word 'enemy,' as used herein, shall be deemed to mean, * * * —(a) Any in-

dividual * * * of any nationality, resident within the territory * * * of any nation with which the United States is at war * * *."

After Germany had practically overrun Europe, Congress amended § 5(b) of the Act by Joint Resolution of May 7, 1940, 54 Stat. 179, Section 2 of which provided: "Executive Order Numbered 8389 of April 10, 1940, and the regulations and general rulings issued thereunder by the Secretary of the Treasury are hereby approved and confirmed."

Executive Order No. 8389, Section 11B: "The term 'national' of Norway or Denmark shall include any person who has been or whom there is reasonable cause to believe has been domiciled

Cerutti was a "resident" of Italy at the time of the vesting.

■ Appellants first contend that we are foreclosed by the finding in the commitment proceedings of the New York Supreme Court from again investigating the residence of Cerutti. But commitment proceedings are in rem to determine status. See Hughes v. Jones, 116 N.Y. 67, 22 N.E. 446, 5 L.R.A. 632, 15 Am.St.Rep. 386. And as such they bind non-parties only as to the status found. See Restatement, Judgments (1942), § 74(1), and comment a. The decree is "not conclusive [upon non-parties] as to a fact upon which the judgment is based * * *." Id. at § 74 (2), and comment c.

In argument we are presented with contrary definitions of the word "resident." [3] The appellants argue first that it means domicile, and alternatively, that if it doesn't, it means some conception of legal residence as opposed to actual residence or happenstance physical presence in an enemy country. They then point to many facts to show that Cerutti remained "resi-

dent" in the United States: being mentally incompetent, he was never capable of forming the requisite intent to change his domicile or legal residence; that he was in Italy only for the specific purpose of his health;[4] that his remaining in Italy after declaration of war was involuntary.[5]

The appellee to the contrary contends that "resident", as used in the presently pertinent statute, is to be taken to refer to physical presence alone; and further points out that in any event Cerutti, while in this country, had always intended to return to Italy; that when he went there he stayed with relatives; that he was only occasionally, and then voluntarily, an inmate of Villa Turro; that when he was, he was a "free incompetent"; that he tried to purchase a new villa in Italy; that he paid taxes, contributed to local charities, was a sympathizer with the Fascist regime, and voted in the general election of 1934 after having previously ascertained that he was properly enrolled as an Italian citizen and subject.[6] The district judge found that Cerutti had be-

---

in or a subject, citizen or resident of Norway or Denmark * * * and all persons acting or purporting to act directly or indirectly for the benefit or on behalf of the foregoing." Tit. 3 C. F.R. Chap. II, Cum.Supp. p. 645, at 646, April 10, 1940.

This was amended by Executive Order No. 8785, Section 5, 12 U.S.C.A. § 95a note: "D. The term 'foreign country' shall include, but not by way of limitation, (i) The State and the government thereof on the effective date of this Order as well as any political subdivision, agency, or instrumentality thereof or any territory, dependency, colony, protectorate, mandate, dominion, possession or place subject to the jurisdiction thereof, * * *. E. The term 'national' shall include, (i) Any person who has been domiciled in, or a subject, citizen or resident of a foreign country at any time on or since the effective date of this Order, * * *." Id. p. 948, June 14, 1941.

After the United States entered the war, Congress passed the amendatory act of 1941 (supra note 1), section 302 of which provided that all prior "acts, actions, regulations, rules, orders, and proclamations" were "approved, ratified, and confirmed."

And the final attempt at definition is found in Executive Order No. 9193, 50 U.S.C.A.Appendix, § 6 note, section 2 (f) of which authorizes the Custodian to vest property of "a designated enemy

country or national thereof," and section 10(a) of which provides: "The term 'designated enemy country' shall mean any foreign country against which the United States has declared the existence of a state of war * * * and any other country with which the United States is at war in the future. The term 'national' shall have the meaning prescribed in section 5 of Executive Order No. 8389, as amended, * * *." C.F.R. loc. cit. p. 1174, July 6, 1942.

We are cited to several discussions of Congress, none of which help in the present problem. See S.Rep. 113, 65th Cong., 1st Sess. p. 2; 55 Cong.Rec. 4922.

[3] As shown supra note 2, both grounds of the Custodian's action turn on this definition, characterization in § 2 of the Act as an "enemy" being defined as "resident within," and "national" of § 5(b) as "resident of." The difference on phrasing does not seem so great as to require separate consideration or different results.

[4] Compare § 406(c) of the Nationality Code, 54 Stat. 1170, 8 U.S.C.A. § 806(c), which provides an exception to the expatriation rule when residence abroad is for purposes of health.

[5] This seems inconsistent with the argument based on his mental incapacity to decide where to live.

[6] It appears from the evidence that not having notified the Italian authorities of his naturalization in the United States, he remained on the rolls.

come an "actual resident" of Italy and entered judgment for the defendant. This appeal followed.

■ In determining whether Cerutti falls within the provisions of the statute authorizing the seizure of the property of a citizen of the United States, his physical presence, or to use the phrase of the trial court his "actual residence" there at the time the vesting order took effect, is not decisive. Stadtmuller v. Miller, 2 Cir., 11 F.2d 732, 45 A.L.R. 895; Vowinckel v. First Federal Trust Co., 9 Cir., 10 F.2d 19; Miller v. Sinjen, 8 Cir., 289 F. 388. Cerutti's property in New York was in no way threatened with subjection to enemy uses by reason of his presence in Italy. He had no control over it himself since it was being administered by a committee appointed by the New York court; and, consequently, Italy could exercise no control over it through the control of him. Furthermore, the New York court would not have permitted its use for the benefit of an enemy. See Petition of Bernheimer, 3 Cir., 130 F.2d 396. Such use could also have been prevented by a freezing order issued by the Treasury. See Executive Orders Nos. 8389 and 8785, supra.

The property being in cash and securities its confiscation was not required, as, for instance, is the case of assets consisting of, or controlling, manufacturing facilities usable to secure production of materials to aid this government in the prosecution of the war; and, as a means for the purchase of such materials, it was comparatively negligible.

■ The purpose of confiscation under the Trading with the Enemy Act is either to lessen the ability of the enemy government to make war upon the United States by depriving it of the means so to do which would otherwise be within its reach or to enhance the ability of this country to prosecute the war. Prize Cases, 2 Black 635, 17 L.Ed. 459; Hanger v. Abbott, 6 Wall. 532, 18 L.Ed. 939; Miller v. United States, 11 Wall. 268, 20 L.Ed. 135, 155; United States v. Chemical Foundation, Inc., 272 U.S. 1, 9–11, 47 S.Ct. 1, 71 L.Ed. 131. To prevent advantage to an enemy by trading with a citizen residing in the enemy's country the property of the citizen may be seized and confiscated. The Venus, 8 Cranch. 253, 3 L.Ed. 553; Miller v. United States, supra; Kahn v. Garvan, D.C.S.D.N.Y., 263 F. 909. Residence by a citizen in the enemy's country for the purpose of trade stamps the property of the citizen with an enemy character sufficient to support the seizure and confiscation of his property. The Frances, 8 Cranch. 363, 3 L.Ed. 590. " * * * any property which the enemy can use, either by actual appropriation or by the exercise of control over its owner, or which the adherents of the enemy have the power of devoting to the enemy's use, is a proper subject of confiscation." Miller v. United States, supra, 11 Wall. 268, at pages 305, 306, 20 L.Ed. 135. The powers given the Custodian are phrased broadly so as to make for flexibility of administration enabling effectuation of the purposes of the Act.

■ When this significance is, as it should be, given to term "resident" in the Trading with the Enemy Act as amended by the First War Powers Act of 1941 and in the Executive Orders promulgated thereunder, it does not include a citizen in Cerutti's situation. He went to Italy on a temporary visit to attempt to regain his lost mental health. He remained there for that purpose until the war broke out and after that was unable to return. No presumption arose under 8 U.S.C.A. § 804 from his continuous stay in Italy for three years that his citizenship acquired by naturalization had been lost since, by § 806(a) of Title 8 U.S.C.A., § 804 thereof is made inapplicable to a person residing abroad on account of ill health.

Although one with his mental incapacity may not have lived abroad involuntarily, by the same token it is impossible to say that he has voluntarily remained there except in the status he had when he went there for a temporary visit. We think "resident" in the statute and orders imports something more than mere physical presence in a designated enemy country. It would be inconceivable, for instance, that Congress intended to provide for the confiscation of the property of a member of the American armed forces who was captured and held as a prisoner of war within a designated enemy country. Yet in the sense that he was physically present in the enemy country he would be a resident thereof. No such absurd construction of the term is, of course, admissible. Nor does such an extreme case need to be used for illustration. Cerutti's case is a fair example.

His physical presence in Italy at the time his property was seized was a condition not attributable as a matter of law to his volition; his property could not be used to aid the enemy; he was not engaged in trade with the enemy and he could engage in no commercial activities of any kind whatever. He was an American citizen whose presence in Italy for reasons beyond his control did not subject his property to any control or use by an enemy government and so did not make him a "resident" of Italy within the meaning of the statute and executive orders under which his property in this country was seized. Stadtmuller v. Miller, supra; Vowinckel v. First Federal Trust Co., supra; Miller v. Sinjen, supra. Consequently he was neither an "enemy" nor "a foreign national" nor "a national of a designated enemy country."

Though a vesting order may not necessarily be condemnation nor confiscation, it does, when it lawfully becomes effective, prevent any suit for the recovery of the property except in accordance with the provisions of § 9(a) of the Trading with the Enemy Act, Draeger Shipping Co., Inc., v. Crowley, D.C.S.D.N.Y., 49 F. Supp. 215, and leaves the ultimate disposition of property subject to action by Congress.

We are bound to construe the term "resident" in so far as reasonably possible in a way to avoid either invalidating the statute and orders on constitutional grounds or raising a serious doubt as to their constitutionality. Federal Trade Commission v. American Tobacco Co., 264 U.S. 298, 307, 44 S.Ct. 336, 68 L.Ed. 696, 32 A.L.R. 786; Ex parte Mitsuye Endo, 323 U.S. 283, 299, 65 S.Ct. 208; United States v. Shreveport Grain & El. Co., 287 U.S. 77, 82, 53 S.Ct. 42, 77 L.Ed. 175. If the term "resident" is held to include a United States citizen in the situation of Cerutti and the statute and orders are construed to provide for the seizure and withholding of his property in this country, held here as it is, the failure to provide any remedy for its return or for just compensation to the owner for its seizure, other than what § 9(a) affords, would create such a doubt. Becker Co. v. Cummings, 296 U.S. 74, 79, 56 S.Ct. 15, 80 L.Ed. 54.

Judgment reversed and cause remanded with directions to enter judgment for the plaintiffs.

CLARK, Circuit Judge, dissents with memo.

CLARK, Circuit Judge (dissenting).

Conceding the validity of the abstract legal principles stated in the opinion, I nevertheless think that the District Court's finding of Cerutti's "actual" residence in Italy was not "clearly erroneous" and justified the defendant's judgment, which it arrived at after a most carefully reasoned opinion. Indeed, I cannot avoid the feeling that the present result seems rather absurd as a practical matter. For it views as still a resident of New York for war-defense purposes a man who returned to his old homeland (lately an enemy country) a decade and a half ago, of his own volition and by himself, and stayed there, trying to purchase a villa, paying taxes, contributing to local charities, being "a sympathizer with the Fascist regime," voting there "in the general election of 1934 after having previously ascertained that he was properly enrolled as an Italian citizen and subject," and being "only occasionally, and then voluntarily," an inmate of a sanitarium. Not until six years after his return was he adjudged an incompetent, and then only as to his property. This holding opens distinct possibilities as to means of retaining not merely American citizenship, but American residence for many years after actual residence in a country now our enemy. For example, consider a person caught abroad by the depression without means to return; does he not come within the ruling? I do not think this case is like that of "transients," such as prisoners of war or other quite temporary visitors. Stadtmuller v. Miller, 2 Cir., 11 F.2d 732, 45 A.L.R. 895.

The result here appears to flow from two premises, neither of which should be accepted in my judgment. The first is the effectiveness of the adjudication of incompetency (not of commitment) in the New York courts. Had this adjudication not existed, I doubt if Cerutti's Italian actual residence would have been questioned. But as properly pointed out, this adjudication is not legally binding. It should not be made so practically, having in mind the obvious different setting and purpose of the state proceeding. The second is that under the circumstances Cerutti's New York property could not be subjected to enemy uses or enhance the ability of this country to prosecute the war.

650

Passing the point that we cannot know this by any direct evidence of record, I think the whole purpose of the legislation may be frustrated if courts attempt to decide the validity of seizure upon the equities of individual cases. If we are unwilling to declare the invalidity of this war statute as a whole, we are not at liberty to set it aside in particular cases. This is a stern measure, so much so that probably Congress, as before, will be induced to take action for a return in part, if not in whole, of the seized property. But we should not try to anticipate such general legislation by special action in particular instances. I would affirm.