## UNITED STATES v. KARAHALIAS.

### No. 218, Docket 22632.

United States Court of Appeals
Second Circuit.

Argued April 14, 1953.

Decided June 2, 1953.
On Petition for Rehearing July 17, 1953.

Frank W. Jackson, New York City, for appellant.

William J. Sexton, J. Edward Lumbard, Jr., U. S. Atty., S. D. New York, Louis Steinberg, Dist. Counsel, United States Department of Justice, Immigration and Naturalization Service, New York City, for appellee.

Before L. HAND, AUGUSTUS N. HAND and FRANK, Circuit Judges.

L. HAND, Circuit Judge.

This is an appeal from an order of the District Court, denying the motion of a naturalized citizen to reopen a judgment, entered against him by default in an action to cancel his certificate of naturalization. It was heard upon affidavits, and the judge denied it because the defendant's "inaction" for a period of almost seventeen years "indicates the lack of any reason justifying relief from the operation of the decree." The facts, as they appear in the affidavits, are as follows. The defendant in the action, Karahalias, was born in Greece, first came to the United States in 1910, when he was sixteen years old, and lived here continuously until 1925, when he filed a declaration of his intention to become a citizen. In June of that year he was granted a permit to return to Greece, where he married a Greek citizen, but came back to the United States without her in 1926 and was naturalized on November 15, 1927. In June, 1929, he got a passport, on which he again went to Greece in order to bring his wife to this country and to settle his father's estate; but he stayed on in Greece until January, 1947, an uninterrupted period, therefore, of more than seventeen years. His excuse for this long delay and his reasoning that it did not establish his residence in Greece are as follows. In May, 1931, his permissible period of absence being about to expire, he procured from our Embassy in Athens an extension of six months, and thereafter further extensions "until about 1935." The reason that he gave and that the Embassy accepted, was that his wife was so ill that any attempt to bring her to this country would endanger her life; and her condition continued to be as grave until September, 1939. He "had requested on several occasions theretofore from the American Embassy at Athens to allow me to return home alone, but I was strongly informed that I could not return as such citizen alone unless accompanied by my wife and children." When the war broke out in September, 1939, it became impossible for him to come back until early in 1947, when he left his wife and two of his four children in Greece, and was allowed to enter with the other two. Meanwhile, on May 17, 1934, an action had been brought to cancel his certificate of naturalization, service of which was made by publication, and of which he received notice, as appears from a registry receipt signed by him on file among the papers in the action. On this proof of service judgment was entered herein on March 15, 1935, cancelling his certificate. In his affidavit he says he did not learn of the entry of the judgment until his return in 1947, but he does not deny that he received copies of the petition and summons.

The Supreme Court definitely decided in Klapprott v. United States, 335 U. S. 601, 69 S.Ct. 384, 93 L.Ed. 266, that a judgment by default was valid in a denaturalization action, and it recognized the doctrine in Ackermann v. United States, 340 U. S. 193, 71 S.Ct. 209, 95 L.Ed. 207, although in that case the default had been in taking an appeal, for the defendant had contested the action in the District Court. In United States v. Eichenlaub, 2 Cir., 180 F.2d 314, we read Klapprott v. United States, supra, as so holding, although we were deciding whether to open

a consent judgment. The Third Circuit too has so understood it.[1] However, two questions arose in Klapprott v. United States, supra: (1) Whether a decree should be entered, dismissing the action to cancel the certificate; or (2) whether on the record before the Court, only the order denying the motion to vacate the decree cancelling the certificate should be reversed, and the cause remanded for a hearing upon the issues raised by the petition to vacate that decree. Upon a rehearing, 336 U.S. 942, 69 S.Ct. 398, 93 L.Ed. 1099, the United States succeeded in limiting the mandate to the second form so that when it went down, it directed the District Court "to receive evidence on the truth or falsity of the allegations contained in petitioner's petition to vacate the default judgment entered in the denaturalization proceedings." It follows that upon this appeal we are only to decide whether the allegations of Karahalias would, if proved at a hearing, require the vacation of the decree of concellation, thereby opening for trial the action for denaturalization.

This depends upon whether the petition to reopen the judgment is permissible under Rule 60(b), Fed.Rules Civ.Proc. 28 U.S.C.A. Confessedly Karahalias may not invoke subsections (1), (2) or (3) of that rule, because of the limitation upon them of six months; nor may he invoke subsections (4) or (5), because the judgment is not within them. If he is to succeed, therefore, he must bring himself within subsection (6); and literally, he may not do so, because there can be no doubt that his ground of relief is "excusable neglect"; and unless subsection (6) be read as providing an exception to subsection (1), the order on appeal was right. It seems to us that subsection (6) must be so read, not only as to subsection (1) but as to (2) and (3). It is extremely difficult to imagine any equitable grounds for relief that these three subsections do not cover, for subsections (4) and (5) are not really for equitable relief at all. Subsection (6) on the other hand is itself clearly for equitable relief, and, if confined to situations not covered by the first three subsections, would be extremely meagre, even assuming that we could find any scope for it at all. Moreover, if we could, it would be a strange purpose to ascribe to the Rule to say that, although subsection (6) was no more than a kind of receptacle for vestigial equities, it should be without any limit in time, while the other and the usual equitable grounds for relief were narrowly limited. We do not believe that this was its purpose; we think that it was meant to provide for situations of extreme hardship, not only those, if there be any, that subsections (1), (2) and (3) do not cover, but those that they do. In short—to put it quite baldly—we read the subsection as giving the court a discretionary dispensing power over the limitation imposed by the Rule itself on subsections (1), (2) and (3); and such seems to have been also the opinion of the Third Circuit in United States v. Backofen, supra, 176 F.2d 263.

■ Coming then to the facts at bar, the question is whether Karahalias was justified in doing nothing, after learning late in the year 1934, that an action had been begun to cancel his certificate. In deciding this we are to assume that he had been told by those to whom he had been referred in our Embassy at Athens, that he would not be allowed to come back at all, unless he took his wife with him, and that until September, 1939, it continued impossible for him to take her except at the risk of her life. We understand that the United States does not deny that it was impossible for him to come back after September, 1939, before he did so in fact; or at least that his further delay is not to be taken against him. If it does not so concede, we so decide; and so the appeal comes down to whether Karahalias's inaction for nearly five years between the end of 1934, and September, 1939, excused him under subsection (6) of Rule 60(b). We think that it did, when we consider the importance of his interest in retaining his citizenship. The most that he could possibly have done in his predicament was to retain an attorney to put in an answer in the action. That would indeed

1. United States v. Backofen, 176 F.2d 263.

334

have delayed the entry of the judgment, but without more it would not have prevented it, if the United States had chosen to press the case for trial. It is true that the attorney might have taken Karahalias's deposition in Greece, but upon the issue whether a citizen has obtained his certificate fraudulently, his deposition is a poor defence; his best chance to overcome the presumption of the statute is to convince the judge by his bearing and his general presence that he had no reserves of allegiance when he was admitted. The same is also true of the issue whether he ever took up any "residence" in Greece at all, on which the presumption of "fraud" itself depends. How much understanding of all this is it fair to impute to Karahalias? The summons and complaint in the action could hardly have told him what they would have told one versed in the law; indeed, he may have thought that he was in no further danger than to pay the sum of $250 mentioned in the summons. The United States answers that the evidence may now be lost, on which it could have relied to prove Karahalias's fraud. Perhaps so, though it is unlikely that more was meant by its petition than to invoke the statute [2] that a naturalized citizen who within five years takes up "permanent residence" in another country is presumed not to have intended to become a permanent citizen of the United States and to authorize the cancellation of his certificate for fraud. The effect of that is to put the duty upon the citizen to present evidence showing his good faith; and, at least so far as yet appears, the United States has in fact lost no evidence that it ever had.

However, as we have said, upon these papers we do not decide whether the judgment of denaturalization should be vacated. That must await the kind of hearing provided in Klapprott v. United States, supra, 336 U.S. 942, 69 S.Ct. 398, at which it will appear whether upon the balance of equities between the United States and Karahalias, it would be a grave and unwarranted injustice to deny him an opportunity to answer the petition of denaturalization. We decide nothing more now than that what he alleges in excuse for his delay and to rebut his acquisition of residence in Greece, may be enough to counterbalance any prejudice that the United States will suffer by a revival of the action.

The United States also invokes the statutes [3] that declare that a naturalized citizen will forfeit his citizenship if he "resides" in his domicil of origin for three years. Whether Karahalias did "reside" in Greece during the time he was there depends upon his intent, and that in turn upon the circumstances that may have compelled him to remain. As we have seen, that same question is involved in determining the presumption of fraud on which the United States bases the main action. Its petition may be amended to allege this ground as a second count, if it be so advised, and the controversy in both its aspects may then be tried at one time.

Order reversed; cause remanded for further proceedings in accordance with the foregoing.

### On Petition for Rehearing

In this petition for a rehearing the United States raises two points, the first of which is that we were wrong when we said that as to Karahalias "there is no doubt that his ground for relief is 'excusable neglect'"; and also when we said that subsection (6) of Rule 60(b) should be read "as giving the court a discretionary dispensing power over the limitation imposed by the Rule itself on subsections (1), (2) and (3)". Both these statements, the petition says, were contrary to the opinion of the Supreme Court in Klapprott v. United States, 335 U.S. 601, 69 S.Ct. 384, 93 L.Ed. 266, and we agree. In that case as in the case at bar forcible obstacles were interposed to prevent, or at least greatly to impede, a naturalized citizen's making his defence to an action to cancel his citizenship. The Court divided as to the result, the minority holding that Klapprott's inaction was "neglect," for which he offered an excuse; and that subsection (6) did not toll the limitation of the Rule upon any kind of "neg-

**2.** § 804, Title 8 U.S.C.

**3.** § 804 and § 809, Title 8 U.S.C., U.S.Code Cong.Service 1945, p. 514.

lect," whatever the excuse might be. That was obviously contrary to what we said, both in reasoning and in result. On the other hand, the majority held that subsection (6) might, and in the case before it did, toll the limitation when the citizen's inaction resulted from forcible obstacles imposed upon his defence. So far we were in accord; but we failed to note our divergence from the majority's reasoning; for they held that Klapprott's inaction was not "neglect" at all, and we must retract our holding that Karahalias's inaction was. Moreover, we must also retract the construction we put upon subsection (6), and hold that no "neglect," however excusable, will survive the limitation of Rule 60(b). On the other hand, since Karahalias's inaction was not "neglect," it was not subject to any limitation; and, since it fell within the terms of subsection (6), it requires the judgment to be reopened. Therefore, we hold as before that if Karahalias can prove that he was prevented from returning to the United States from the time he learned of the action to cancel his citizenship, the judgment must be opened.

■ The second objection in the petition is to that passage in our opinion in which we said that "whether Karahalias did 'reside' in Greece during the time he was there, depends upon his intent and that in turn upon the circumstances that may have compelled him to remain." The argument is that this is contrary to what the Supreme Court said in Savorgnan v. United States, 338 U.S. 491, 504, 505, 70 S.Ct. 292, 299, 94 L.Ed. 287. In that part of the opinion on which the petition relies the Court said of the Act in question that it "used the terms 'residence' and 'place of general abode' without mention of the intent of the person concerned. * * * In contrast to such terms as: 'temporary residence,' 'domicile,' 'removal, with his family and effects,' 'absolute removal' or 'permanent residence,' the new Act used the term 'residence' as plainly as possible to denote an objective fact." Again, "The words 'place of general abode' * * * seem to speak for themselves. They relate to the principal dwelling place of a person." There can of course be no doubt that by all this the Court meant to exclude "intent," in the sense that that word is a factor in determining domicile. On the other hand, we do not believe that the Court meant to hold that a person's "permanent place of abode" must always be determined only by his external conduct, regardless of the purposes of his stay. In the case at bar, if Karahalias went to Greece for a temporary visit that was continued because of his wife's illness, until he was forbidden a reentry or was prevented by the war, we do not believe that he automatically lost his citizenship.

The judgment will be reversed and the cause remanded for further proceedings consistent with our first opinion, so far as that has not been modified by the foregoing.