**Frank GARLASCO, Plaintiff-Appellee,**

v.

**John Foster DULLES, Secretary of State of the United States of America, Defendant-Appellant.**

No. 157, Docket 24169.

United States Court of Appeals
Second Circuit.

Argued Feb. 6, 1957.

Decided April 2, 1957.

Louis Schifrin, New York City (David I. Shivitz, Samuel L. Scholer, Theodore P. Halperin, New York City, of counsel), for plaintiff-appellee.

Paul W. Williams, U. S. Atty. for the Southern Dist. of New York, New York City (George M. Vetter, Jr., Asst. U. S. Atty., New York City, of counsel), for defendant-appellant.

Before CLARK, Chief Judge, MEDINA, Circuit Judge, and SMITH, District Judge.

J. JOSEPH SMITH, District Judge.

This is an appeal by defendant from a judgment declaring that plaintiff was a national of the United States on March 2, 1951, entered in an action brought September 10, 1952, under the Act of October 14, 1940, Chap. 876, Title I, Subchapter V, Sec. 503, 54 Stat. 1171, 8 U.S.C. § 903.*

Plaintiff was born in Italy in 1893, came to the United States in 1901, married a native born American citizen in 1929, and was naturalized an American citizen in 1932. The district court found that he remained in the United States except for three rather brief periods from 1901 to the latter part of 1946. He lived abroad principally in Italy from December 5, 1946, when he left New York, to December 29, 1948, then at a New York hotel until March 15, 1949, and again principally in Italy until his return to the United States on December 8, 1950. His residence in Italy was for the most part at a villa owned by his wife on Lake Maggiore.

On a subsequent trip abroad in 1951 the plaintiff was notified by the State Department that it would not renew his passport on the grounds that he had expatriated himself by his stays in Italy during 1946 to 1950. In September of 1952, the plaintiff commenced the present action for a declaratory judgment, declaring him to be a citizen of the United States.

The statutory basis of plaintiff's expatriation is found in the Nationality Act of 1940, Section 404:

"A person who has become a national by naturalization shall lose his nationality by: * * *

"(b) Residing continuously for three years in the territory of a foreign state of which he was formerly a national or in which the place of his birth is situated, except as provided in section 406 hereof." **

The place of residence is defined in Section 104 of the Act as the place of general abode.[1]

Judge Murphy held that plaintiff's place of general abode, during the period of some 2½ months, ending March 15, 1949, when plaintiff was in New York, was not in Italy, but in the United States. The language of the Court upon which attack is made by defendant reads in part (Appellant's Appendix 10a):

---

* Immigration and Nationality Act 1952, 8 U.S.C.A. § 1503.

** Immigration and Nationality Act 1952, 8 U.S.C.A. § 1484(a).

1. The Act of June 27, 1952 further defines the place of general abode as a person's principal, actual dwelling place in fact, without regard to intent. 8 U.S.C.A. § 1101(a) (33). That Act was not in effect, however, at the date in issue here.

"However, in this case plaintiff left Italy during the period in question and returned to the United States for 2½ months. A temporary visit to the United States does not necessarily break the continuity of residence or general abode in Italy. The factual question still remains: Where was plaintiff's place of general abode during the brief period he was in the United States? In cases of this nature the burden is on the government to prove that the place of general abode remained in Italy. This is a heavy burden. cf. Baumgartner v. U. S., 322 U.S. 665, 64 S.Ct. 1240, 88 L.Ed. 1525; Gonzales v. Landon, 350 U.S. 920, 76 S.Ct. 210, 100 L.Ed. 806. The only evidence introduced in this regard was plaintiff's application for an extension of his passport less than one month after his return to this country. The inference to be drawn from this is that plaintiff intended to hasten back to Italy and did not intend to tarry and reside here. But what plaintiff intended is immaterial. Savorgnan v. United States, 338 U.S. 491, 70 S.Ct. 292, 94 L.Ed. 287. While the absence of physical presence does not, without more, negative residence, actual physical presence is strong evidence of residence in the place where plaintiff is physically found. And it must be held to be conclusive unless the government produces other evidence of facts or surrounding circumstances which tend to destroy the inference. This the government has wholly failed to do."

██ Judge Murphy thus treated the evidence of application for passport less than one month after Garlasco's return to this country on the ground that his intention was immaterial. The government maintains that this evidence was probative of the fact that plaintiff never terminated his general abode in Italy despite his return to the United States. As such this evidence would be material. But "proof to bring about a loss of citizenship must be clear and unequivocal," Baumgartner v. U. S., 322 U.S. 665, 64 S.Ct. 1240, 1243, 88 L.Ed. 1525. The fact that a man who had lived in this country for 45 years applied for a passport within a month of returning to his adopted country is not so overwhelmingly convincing that it "leaves no troubling doubt." Baumgartner v. U. S., supra. The Court's statement might have gone more fully into the sense in which intent was held to be immaterial since it was to serve as findings and opinion. However, the judgment may be upheld if the statement that what plaintiff intended as shown by the passport application was immaterial is used in the sense in which this court in the Karahalias case interpreted Savorgnan v. U. S., 338 U.S. 491, 70 S.Ct. 292, 94 L.Ed. 287, that is, that intent to reside at a place indefinitely, although necessary to establish domicile, is not necessary or material in establishing residence or place of general abode under the Nationality Act. U. S. v. Karahalias, 2 Cir., 205 F.2d 331. Judge Murphy, if we so read his opinion, held that the application for passport extension alone was insufficient to negative the place of general abode established by plaintiff's actual physical presence with his wife in New York and his testimony as to the circumstances of his return from New York to his wife's lake villa in Italy for a further period. The specified overt acts when voluntarily done, effect expatriation regardless of undisclosed intent not so to effect expatriation and regardless of intent in the sense that the word is a factor in determining domicile. Savorgnan v. U. S., supra; U. S. v. Karahalias, supra. The overt act of maintaining a place of general abode would naturally, however, have in it some subjective element of purpose of staying at the place even under the 1952 Act. Stay at a hotel for a substantial period and holding it out as a place of permanent residence might evince an adoption of that hotel as a place of general abode. Here Judge Murphy in effect held that the applica-

tion for passport for return to Italy was not sufficient to outweigh the physical presence of Garlasco and his wife at the New York hotel for some two and one half months as establishing a place of general abode for that period. In so holding, he was entitled to consider that Garlasco was a man who had spent some 45 years, the greater part of his life since childhood, in this country, had been naturalized here and was married to an American citizen.

■ Judge Murphy properly held the absences from Italy in Switzerland of less than a week's duration at a time not to break the periods of continuous residence in Italy. He was correct also in holding that the burden remained on the government throughout to establish the continuity of the residence abroad, in view of the serious consequences of involuntary expatriation. Gonzales v. Landon, 350 U.S. 920, 76 S.Ct. 210, 100 L.Ed. 806. We cannot say that it was clearly erroneous to find that the government had not sustained the burden of establishing that the New York residence was not a principal place of adobe for a sufficient period to break the continuity of his Italian abode.

Affirmed.

MEDINA, Circuit Judge (dissenting).

I dissent because I think the State Department is entitled to a clear and explicit statement of the rule of law governing these expatriation cases, based on alleged continuous residence for three years in the territory of the foreign state of which the citizen "was formerly a national or in which the place of his birth is situated."

While appellee was physically at the Hotel Delmonico in New York City from December 29, 1948, to March 4, 1949, the Government proved that by January 14 he had booked return passage to Italy, and that on January 25, he applied for renewal of his passport so that he might return to Italy. "The inference to be drawn from this," the trial judge found, "is that plaintiff intended to hasten back to Italy and did not intend to tarry and reside here." [138 F.Supp. 798.] Yet he ruled that appellee did nevertheless "reside" here for that period as a matter of law, since "what plaintiff intended is immaterial," citing Savorgnan v. United States, 338 U.S. 491, 70 S.Ct. 292, 94 L.Ed. 287, which merely holds that intent in the sense that it is a factor in determining domicile has no relevancy. It is clear to me that "the principal dwelling place of a person" or his "place of general abode" necessarily involves a probing of his intention; and the cases so hold. United States v. Karahalias, 2 Cir., 205 F.2d 331; Josephberg v. Markham, 2 Cir., 152 F.2d 644; Mendelsohn v. Dulles, D.C.Cir., 207 F.2d 37. Appellee's intention to make the Hotel Delmonico his "place of general abode" is of crucial significance in determining the effect of a two-months sojourn in this type of case; only his intent not to expatriate himself and his intent as to his "permanent residence" are immaterial.

The trial judge, having ruled that appellee's intention was immaterial, went on to say that mere physical presence is not determinative of "residence." But these words convey no meaning to me. If intent is immaterial, what is left but physical presence to determine "residence"? Thus, although the trial judge purported to adopt a rule that would permit the Government to rebut the "inference" that "residence" accompanies physical presence, it is clear that no such rebuttal is possible. In other words, despite the language used, the holding of the trial judge is that "residence" is synonymous with physical presence for a two-months period. This is not the law, and my brothers seem to agree that it is not.

Accordingly, I would remand the case so that upon a new trial there may be a finding on the basic issue of appellee's intent. For I can perceive in the record no finding of fact that appellee's intent was or was not to shift his place of general abode from his wife's villa in Italy to the Hotel Delmonico in New York. Indeed, as noted above, the trial judge stated that the proper inference from the undisputed facts was that it was

appellee's intent not to establish a residence in New York. The record and opinion below will be searched in vain for even the slightest indication of a contrary finding. This being so, I am puzzled by the use of the expression "clearly erroneous" in my brother Smith's opinion.

The case having been decided on an erroneous theory of law, the discussion of the burden of proof by the court below has no significance whatever.

Unless we are to take over the functions of the trial judges, which as a court of review we should not do, it seems to me that the case must be remanded.

While the record does not disclose contradictions between the testimony of various witnesses, and the proofs adduced would warrant a finding that appellee intended the Hotel Delmonico as his "principal dwelling place" during his sojourn in New York, I think it perfectly plain that the proofs would sustain a contrary finding. The task of deciding such matters has not been assigned to us.