Javier ALCAREZ–GARCIA, aka Garcia
Javier Alcarez, Petitioner,

v.

John ASHCROFT, Attorney
General,* Respondent.

No. 00–70635.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 6, 2001—
Pasadena, California.

Filed June 20, 2002.

Mathew L. Millen, Los Angeles, CA, for the petitioner.

Regina Byrd and Anh–Thu P. Mai, United States Department of Justice, Civil Division, Washington, DC, for the respondent.

Before CYNTHIA HOLCOMB HALL, KOZINSKI and W. FLETCHER, Circuit Judges.

Opinion by Judge CYNTHIA HOLCOMB HALL; Dissent by Judge Kozinski.

## OPINION

CYNTHIA HOLCOMB HALL, Circuit Judge.

This case requires us to determine whether an individual who was physically present and working in the United States for 9 months out of the year for 8 years out of a 9–year period established resi-

---

* John Ashcroft is substituted for his predecessor as Attorney General. Fed. R.App. P.

43(c)(2).

dence for that 9–year time period under section 201 of the Nationality Act of 1940, 8 U.S.C. § 601(g) (1940). We conclude that he did, grant his petition for review, and remand to the Board of Immigration Appeals ("BIA").

## I. FACTS AND PROCEEDINGS BELOW

### A. Background

Petitioner Javier Alcarez–Garcia was born in Mexico on December 6, 1952. Petitioner's mother is a native and citizen of Mexico. Petitioner's father, Crescencio Alcarez, was born in Texas on September 15, 1920, and was a United States citizen. He married Petitioner's mother in 1942. Petitioner's father died in 1988.

Petitioner's father lived in the United States for 2 years from 1920 to 1922, at which time his parents moved to Mexico. In 1943, Petitioner's father obtained employment on a farm in Texas. Petitioner's father worked on the same farm in the United States from 1943–1952, generally living 9 months (March–November) each of these years in Texas and spending the remaining 3 months with his family in Mexico. The only exception occurred in 1947, when he spent more time in Mexico than in Texas due to a bad crop season. His wife lived with his parents in Mexico until approximately 1948 or 1949, at which time she and her children moved into a separate house in the same town. The wife and (then two) children never traveled to the United States during that period.

According to Petitioner's mother, Petitioner's father began living exclusively in the United States beginning in 1956, and eventually, in 1963, sponsored his family for residency in the United States. It appears that Petitioner's father worked for the same brick manufacturing company in California from 1959 until his death in 1988.

### B. Lower Court Proceedings

The INS commenced removal proceedings against Petitioner through issuance of a Notice to Appear dated April 4, 1997. The INS charged that Petitioner was removable for a violation of 8 U.S.C. § 1182(a)(6)(A)(i) (1997), as an alien present in the United States without being admitted or paroled. Based on Petitioner's prior violation of 8 U.S.C. § 1251(a)(2)(A)-(B) (1994), for which he was deported, the INS filed an additional charge asserting removability under 8 U.S.C. § 1182(a)(9)(A)(ii) (1997), which limits its admission of aliens previously ordered removed.

The Immigration Judge found that Petitioner had failed to prove a "substantial claim of derivative citizenship" because Petitioner's father came to the United States just for seasonal work and thus had not established his residence there. The Immigration Judge sustained the charges against Petitioner and ordered his removal to Mexico. The Board of Immigration Appeals ("BIA") dismissed Petitioner's appeal on the ground that derivative citizenship had not been demonstrated by a preponderance of the evidence, finding that "his [father's] time in the United States was incidental to and dependent upon his employment which was not to exceed a definite, fixed period," and thus that his father's "place of general abode was with his family in Mexico." Board of Immigration Appeals Order at 2. Petitioner then filed a petition for review with this court. We have jurisdiction pursuant to 8 U.S.C. § 1252(b).

## II. STANDARD OF REVIEW

Where as here, the BIA reviews the Immigration Judge's decision *de novo*, our "review is limited to the decision of the [BIA], except to the extent that the Immigration Judge's decision is expressly

adopted by the Board." *Scales v. INS*, 232 F.3d 1159, 1162 (9th Cir.2000). This appeal presents a mixed issue of law and fact; therefore, *de novo* review is appropriate. *See Singh v. Ilchert*, 63 F.3d 1501, 1506 (9th Cir.1995). The standard for proving a claim to United States citizenship is preponderance of the evidence. 8 C.F.R. § 341.2(c).

## III. *DISCUSSION*

 The applicable law for transmitting citizenship to a child born abroad when one parent is a United States citizen is the statute that was in effect at the time of the child's birth. *Scales*, 232 F.3d at 1162. On December 6, 1952, the date of Petitioner's birth, the governing statute provided, in part, that a person shall be a national and citizen of the United States at birth who is

> born outside the United States and its outlying possessions of parents one of whom is a citizen of the United States who, *prior to the birth of such person, has had 10 years' residence in the United States* or one of its outlying possessions, at least five of which were after attaining the age of 16 years, the other being an alien; Provided, That, in order to retain such citizenship, the child must reside in the United States or its outlying possessions for a period or periods totaling 5 years between the ages of 13 and 21 years[.] [1]

8 U.S.C. § 601(g) (1940) (emphasis added). Because neither party disputes that Petitioner's father resided in the United States from 1920–1922, the sole question is whether Petitioner's father "resided" in the United States from 1943–1952, before

Petitioner's birth, while generally living and working in Texas for 9 months each year and visiting family in Mexico for 3 months each year.

Section 504 defines residence as the "place of general abode." 8 U.S.C. § 504 (1940). The Supreme Court has interpreted residence under § 504 to be "the principal dwelling place of a person," without regard to intent. [2] *Savorgnan v. United States*, 338 U.S. 491, 505, 70 S.Ct. 292, 94 L.Ed. 287 (1950). The Supreme Court stated that, in contrast to other definitions of "residence," in § 504 "no mention is made of intent, and the actual 'place of general abode' is the sole test for determining residence." *Id.* (quoting Report on Revision and Codification of the Nationality Laws of the United States (1940)). The inquiry is one of objective fact, and one's "intent as to 'domicile' or as to her 'permanent residence,' as distinguished from her actual 'residence,' 'principal dwelling place,' and 'place of abode,' is not material." *Id.*; *see also* 7 Gordon et al., Immigration Law & Procedure § 93.02[5][c] (2001) ("[T]he Nationality Act's definition did not necessarily contemplate the establishment of a domicile or place of permanent residence.").

Here, the objective facts favor finding the United States to be the Petitioner's father's place of residence from 1943–1952. Petitioner's father was physically present in the United States for 9 months each year (except 1947) during that period, only leaving to visit family in Mexico during his vacation months. The fact that Petitioner's father spent nearly three quarters of his life during those years living and work-

---

**1.** The second residency requirement pertaining to Petitioner himself is not before this Panel. Neither the BIA nor the Immigration Judge addressed this issue.

**2.** The Supreme Court's interpretation has been codified in the current version of the

statute: "The term 'residence' means the place of general abode; the place of general abode of a person means his principal, actual dwelling place in fact, without regard to intent." 8 U.S.C. § 1101(a)(33).

ing in the United States demonstrates that the United States was his *"principal* place of dwelling." Any other conclusion would require applying purely intent or domicile-based definitions of "residence" that the Supreme Court expressly rejected in *Savorgnan.*

Our view is consistent with those taken in other cases that have emphasized the importance of physical presence in determining "residence." *See, e.g., Garlasco v. Dulles,* 243 F.2d 679, 681–82 (2d Cir.1957) (despite having lived in Italy for the previous two years and despite his application for an extension of his passport to return abroad, plaintiff's physical presence with his wife at a New York hotel for 2 months was sufficient to establish residence under § 504 in the United States for that period); *Matter of V.V.,* 7 I. & N. Dec. 122, 123 (BIA 1956) (finding that a 13-year-old student's nine-month stay at boarding school in United States in 1949 satisfied the residency requirement); *Matter of M,* 7 I & N Dec. 643, 645 (BIA 1958) (finding that a student's four year attendance at Yale University satisfied the residency requirement).

Moreover, the government concedes that continuous physical presence is not required to establish residence and that temporary absences do not operate to interrupt the period of the residence under § 504. *See Acheson v. Gee,* 184 F.2d 382, 383–84 (9th Cir.1950) (petitioner's father determined to be a resident of the United States for almost a 12-year span despite two visits, each for about two years, to China to be with his family). Accordingly, Petitioner is entitled to residency credit for the entire time period from 1943 to 1952.

---

**1.** While the statute requires 10 years of residence before petitioner's birth, there was undisputed testimony, accepted by the IJ, that petitioner's father had lived in the United States for two years from 1920 to 1922.

## IV. CONCLUSION

For the foregoing reasons, we reverse the BIA's determination that Petitioner's father did not meet the residency requirement under 8 U.S.C. § 601(g) (1940) that he had acquired 10 years residence in the United States. We remand to the BIA for a determination as to whether Petitioner has fulfilled the separate residency requirement under 8 U.S.C. § 601(g) requiring that the child reside in the United States for 5 years between ages 13 and 21.

Petition for review GRANTED and case REMANDED.

KOZINSKI, Circuit Judge, dissenting:

Petitioner had the burden of showing that his father had established residence in the United States for 10 years before petitioner's birth. 8 U.S.C. § 601(g) (1940). The Supreme Court has held that "residence" means "place of general abode" or "principal dwelling place." *Savorgnan v. United States,* 338 U.S. 491, 505–06, 70 S.Ct. 292, 94 L.Ed. 287 (1950). The question is whether petitioner has presented sufficient evidence that near the beginning of the 9 years in question—1943 to 1952—the father had moved his principal dwelling place from Mexico to the United States.[1]

The evidence supporting petitioner's claim is highly inconclusive. Petitioner's mother testified that during the years in question, her husband came to the United States during the cotton-growing season "to harvest cotton." Tr. at 28. The mother did not know the location of her husband's employment or the name of the employer. Nor did petitioner's mother testify that the father had an established job

---

Thus, he needed only about 8 years of residence during the period in issue. Maj. Op. at 1157. He would have that if he established residence in 1943 or 1944, but not later.

that was held open for his return from year to year. Petitioner offered no income tax records, no utility bills, no letters addressed to his father in the United States and no other evidence identifying the actual place where his father worked and lived. Nor did petitioner offer any other evidence that his father had switched his principal place of abode from Mexico to the United States. All we have supporting this inference is the father's physical presence somewhere within Texas for several months during a number of consecutive years.

At the same time, the evidence undermining the claim of residence in the United States is quite strong. Most significantly, the father left his family, consisting of a wife and minor children, in Mexico, and returned to them at the end of the growing season every year. They did not visit him in the United States nor, apparently, did they even know where he lived. Tr. at 32, 35–36. There is no evidence that petitioner's father retained a home in the United States during his returns to Mexico, nor that he left any of his personal possessions in the United States. An expert on the Mexican–U.S. migration testified that the father's migration patterns were typical of the "annual shuttle migrants"—young Mexican men who, in order to support their families, regularly left Mexico to work in "seasonal agriculture in Texas, California, or the Pacific Northwest." They worked usually on a cash basis, and often illegally. They also remained strongly connected to Mexico, sending money home throughout the year and returning to their families in Mexico in the fall. Statement of Professor L. Manuel García y Griego, at 3–5; *see also* Manuel García y Griego, *The Importation of Mexican Contract Laborers to the United States, in Between Two Worlds: Mexican Immigrants in the United States* 45, 52–53 (David G. Gutiérrez ed., 1996). In an affidavit of support, provided to the INS in

1963 and admitted into the record in these proceedings, the father himself claimed residence in the United States only for the two years as a child and then commencing in 1956, after petitioner's birth.

As the majority correctly points out, we determine residence based on objective facts, not intent. Maj. Op. at 1157. In analyzing the evidence presented, we must start with the established fact that, some time before 1943, petitioner's father had a principal residence in Mexico, where he lived with petitioner's mother and siblings. We must then decide whether petitioner satisfied his burden of showing that the father changed his principal residence from Mexico to the United States. To satisfy this requirement, petitioner must point to a place where the residence was established: a street address, a farm, a hotel, even a locality. *See, e.g., Savorgnan*, 338 U.S. at 505–06, 70 S.Ct. 292 (the petitioner had a residence in Rome because she lived there with her husband and his family); *Garlasco v. Dulles*, 243 F.2d 679, 680–82 (2d Cir.1957) (the plaintiff established residence in the United States by staying in a hotel in New York City); *Matter of M—*, 7 I. & N. Dec. 643, 645 (BIA 1958) (the applicant's father proved residence in the United States by showing that he was a graduate student at Yale University); *Matter of V—V—*, 7 I. & N. Dec. 122, 123 (BIA 1956) (the appellant was a United States resident because he attended a specific boarding school in the United States). Here, petitioner has shown only that his father was somewhere in Texas—an area of 267 thousand square miles. This is a location much too indeterminate to support a finding of residence.

Even if petitioner had identified where his father lived during the growing season, he would also have to show that this location became his father's "general place of abode" or "principal dwelling place." *See*

*Savorgnan,* 338 U.S. at 506, 70 S.Ct. 292. The fact that his wife and children remained in Mexico, that he returned there every year, that he never stayed in Texas past the growing season—including the one year when the season was short, see Maj. Op. at 1156—and that he himself did not consider his residence to be in the United States until 1956 all undermine petitioner's claim that the father had abandoned his principal residence in Mexico in favor of one in the United States.

The majority cites *Acheson v. Yee King Gee,* 184 F.2d 382 (9th Cir.1950), for the proposition that, once residence is established, temporary absences do not interrupt it. Maj. Op. at 1158. *Yee King Gee* is, of course, relevant, but the majority stands that case on its head. *Yee King Gee* started with the proposition that petitioner had an established residence in the United States and considered the nature of his visit abroad to determine whether the departure from the United States had the effect of changing his residence. *Yee King Gee,* 184 F.2d at 383–84. We must do the same here, starting with the established fact that petitioner's father resided in Mexico prior to 1943. Pursuant to *Yee King Gee,* we must then inquire whether his departure to the United States to work as a seasonal agricultural laborer had the effect of changing his principal dwelling place. Clearly it did not. As our cases hold, residence is not broken by a temporary visit to another country, even for a long period; there must be some objective evidence that the individual abandoned his existing general place of abode. *See Yee King Gee,* 184 F.2d at 383–84; *see also Toy Teung Kwong v. Acheson,* 97 F.Supp. 745, 747 (N.D. Cal. 1951) (an individual's trip to China "merely for the purpose of attending his mother in her illness" did not interrupt the continuity of his United States residence); *Wong Gan Chee v. Acheson,* 95 F.Supp. 816, 817 (N.D.Cal. 1951) (an individual who went to China to visit his mother and was detained there by the Second World War did not lose his status as a U.S. resident).

In determining whether petitioner's father abandoned his residence in Mexico, we must focus on the years 1943 and 1944.[2] Did anything happen these years to indicate that petitioner's father meant to abandon his principal residence in Mexico and take up residence in the United States? At the end of 1944, petitioner's father had traveled to the United States twice to work during the growing season, and returned to Mexico once in between those seasons. Because we cannot consider intent, we cannot consider whether he intended to come back to the United States again and again over the succeeding several years, and two visits to the United States are surely not enough evidence to support a finding that the father abandoned his principal residence in Mexico and established a principal residence in the United States. According to the father himself, he did not believe he had changed his residence until 1956. The father, of course, was far more familiar with the circumstances of his living situation than we, and if he claims to have resumed residency in the United States in 1956 and not earlier, there is every reason to take his word for it.

---

**2.** If petitioner's father established residence in the United States in 1945 or later, this would give petitioner less than the 8 years he needs in order to meet the statutory requirement of having one of his parents reside in the U.S. for at least 10 years prior to his birth in 1952. *See* note 1 *supra.*